1  KRISTEN L. BOYLES (CSB #158450)
   Earthjustice
2  705 Second Avenue, Suite 203
3  Seattle, WA  98104-1711
   (206) 343-7340
4  (206) 343-1526 *[FAX]*
   kboyles@earthjustice.org
5

6  *Attorney for Plaintiffs*

7  MICHAEL R. SHERWOOD (CSB # 63702)
   Earthjustice
8  426 Seventeenth Street, 5th Floor
   Oakland, CA  94612
9  (510) 550-6725
10 (510) 550-6749 *[FAX]*
   msherwood@earthjustice.org
11
12 *Local Counsel for Plaintiffs*

13
               UNITED STATES DISTRICT COURT
14          FOR THE NORTHERN DISTRICT OF CALIFORNIA
15                    OAKLAND DIVISION

16 | PACIFIC COAST FEDERATION OF        ) Civ. No. C02-2006 SBA
   | FISHERMEN'S ASSOCIATIONS,          )
17 | INSTITUTE FOR FISHERIES RESOURCES, )
   | NORTHCOAST ENVIRONMENTAL           )   ORDER GRANTING MOTION FOR
18 | CENTER, KLAMATH FOREST ALLIANCE,   )   INJUNCTIVE RELIEF FOLLOWING
19 | OREGON NATURAL RESOURCES           )   REMAND
   | COUNCIL, THE WILDERNESS SOCIETY,   )
20 | WATERWATCH OF OREGON, DEFENDERS    )
   | OF WILDLIFE, HEADWATERS, and       )
21 | REPRESENTATIVE MIKE THOMPSON,      )
22 |                                    )
   |                 Plaintiffs,        )
23 |                                    )
   |       and                          )
24 |                                    )
25 | YUROK TRIBE and HOOPA VALLEY       )
   | TRIBE,                             )
26 |                                    )
27 |             Plaintiff-Intervenors, )
   |                                    )
28 |       v.                           )

| | |
|---|---|
| 1 | U.S. BUREAU OF RECLAMATION, and ) |
| 2 | NATIONAL MARINE FISHERIES SERVICE, ) |
| 3 | ) |
| | Defendants, ) |
| 4 | ) |
| 5 | and ) |
| | ) |
| 6 | KLAMATH WATER USERS ASSOCIATION, ) |
| 7 | ) |
| | Defendant-Intervenors. ) |
| 8 | _____ ) |

On October 18, 2005, the Ninth Circuit Court of Appeals found the final decision of the federal defendants in the 2002-2012 Klamath Irrigation Project Biological Opinion arbitrary and capricious and remanded the case to this Court "for the issuance of injunctive relief." PCFFA v. BOR, 426 F.3d 1082, 1095 (9th Cir. 2005). Plaintiffs Pacific Coast Federation of Fishermen's Associations et al. (collectively "PCFFA") and plaintiff-intervenors Yurok and Hoopa Valley Tribes have moved this Court for injunctive relief against the National Marine Fisheries Service ("NMFS") and the United States Bureau of Reclamation ("BOR") to prevent harm to threatened coho salmon in the Klamath River; specifically, plaintiffs seek an order enjoining BOR from making irrigation diversions at the Klamath Project unless flows in the Klamath River below Iron Gate Dam meet 100% of the flows called for in Phase III of the Klamath Irrigation Project Biological Opinion's Reasonable and Prudent Alternative ("RPA") until a new biological opinion is completed pursuant to Endangered Species Act ("ESA") § 7(a)(2) and reviewed by this Court.

Because the Ninth Circuit invalidated Phases I and II of the Klamath Irrigation Project Biological Opinion, pending reinitiation of ESA consultation and compliance with a new biological opinion, the law is clear that injunctive relief to protect the listed species should issue. See, e.g., Pacific Rivers Council v. Thomas, 30 F.3d 1050, 1057 (9th Cir. 1994) (enjoining all national forest

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 2 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

management activities that "may affect" listed fish pending completion of consultation); Thomas v. Peterson, 753 F.2d 754, 763-65 (9th Cir. 1985) (enjoining construction of a timber road pending consultation); PCFFA v. U.S. Bureau of Reclamation, 138 F. Supp.2d 1228, 1247-50 (N.D. Cal. 2001) (enjoining BOR from irrigation deliveries whenever Klamath River flows below Iron Gate Dam dropped below a minimum level pending completed consultation); Greenpeace v. NMFS, 106 F. Supp.2d 1066, 1072, 1076 (W.D. Wash. 2000) ("In the absence of a completed comprehensive biological opinion [the action agency] has not, and cannot, insure that [the action] will not result in harm to endangered [species]" and "an injunction pending compliance must be the remedy.").

In the Ninth Circuit, a court ordinarily must consider three factors in ruling on an injunction request: (1) the likelihood of success on the merits; (2) whether the balance of irreparable harm favors plaintiffs; and (3) whether the public interest favors issuance of the injunction. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). However, where a party shows either actual success on the merits, or the probability of success on the merits, of claims brought under the ESA, a court's inquiry is largely at an end, Tennessee Valley Auth. v. Hill, 437 U.S. 153, 194 (1978); Thomas v. Peterson, 753 F.2d 754, 765 (9th Cir. 1985). "Given a substantial procedural violation of the ESA in connection with a federal project, the remedy must be an injunction of the project pending compliance with the ESA." Thomas, 753 F.2d at 764; see also National Wildlife Fed'n v. National Marine Fisheries Serv., 422 F.3d 782, 793-94 (9th Cir. 2005) (affirming district court grant of injunctive relief and noting that "we must at the onset reject the argument . . . that the district court erred as a matter of law by failing to conduct a traditional preliminary injunction analysis and, in particular, by failing to weigh economic harm to the public in reaching its conclusion. As the Supreme Court has instructed, such an analysis does not apply to ESA cases because Congress has already struck the balance.") (citations omitted).

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

The Ninth Circuit has already determined that PCFFA has succeeded on the merits of its challenge to the 2002-2012 Klamath Irrigation Project Biological Opinion and BOR's actions in reliance on that Biological Opinion. PCFFA v. BOR, 426 F.3d 1082 (9th Cir. 2005). Specifically, the Court determined that

> the RPA [Reasonable and Prudent Alternative] is arbitrary and capricious because it fails to analyze the effects of eight of ten years of the proposed action on the SONCC coho, a species that has a three-year life cycle. The agency has not demonstrated that it has followed the mandate of the ESA to avoid the likelihood of jeopardy to the SONCC coho. We remand to the district court to craft appropriate injunctive relief.
>
> **REVERSED and REMANDED for the issuance of injunctive relief.**

Id. at 1095 (emphasis in original).

The Ninth Circuit identified fundamental failings of the Biological Opinion and found that NMFS's decision, not merely its stated rationale, conflicted with the underlying science and that NMFS reached conclusions about Phases I and II that were at odds with the evidence in the administrative record. See 426 F.3d at 1092 ("In fact, the agency's decision appears to conflict with the analysis in the BiOp. … Almost all of the analysis in the RPA is concentrated on justification of the long-term flow requirement, and there is little substance to the discussions of Phases I and II.") (emphasis added); id. at 1094 ("while the [NMFS] can draw conclusions based on less than conclusive scientific evidence, it cannot base its conclusions on no evidence."); id. ("An agency does not avoid the likelihood of jeopardy to a listed species when it disregards the life cycle of the species in crafting the measures designed to protect it. Nor can the agency provide only partial protection for a species for several generations without any analysis of how doing so will affect the species."); id. ("However, Phase III clearly presents 'specific quantitative target flows' that the NMFS concluded were necessary to avoid jeopardy. The federal defendants ask us to disregard their quantitative conclusions in favor of their assertions that the first eight years of the RPA will

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 4 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

avoid jeopardy."); id. at 1095 ("We conclude that the RPA is arbitrary and capricious because it fails to analyze the effects of eight of ten years of the proposed action on the SONCC coho, a species that has a three-year life cycle.").

The Ninth Circuit's decision calls for a fundamental rethinking of the conclusions of the Biological Opinion and a comprehensive analysis of the new information that has come to light since May 31, 2002. The Administrative Procedure Act mandates that the reviewing court shall "hold unlawful and set aside agency action" found to be arbitrary and capricious. 5 U.S.C. § 706(2)(A). United States v. Oakland Cannabis Buyers' Co-op., 532 U.S. 483, 497 (2001) (courts cannot, in their discretion, reject the balance that Congress has struck in a statute); Forest Guardians v. Babbitt, 174 F.3d 1178, 1192 (10th Cir. 1999). Given that the May 31, 2002 Biological Opinion is invalid, in order to comply with the ESA, the federal defendants must reinitiate consultation and produce a new biological opinion.

Section 7(a)(2) of the ESA requires all federal agencies, including BOR, to "insure that any action authorized, funded or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species." 16 U.S.C. § 1536(a)(2). Formal consultation results in a biological opinion from NMFS that determines if the action is likely to jeopardize the species; if so, the opinion may specify reasonable and prudent alternatives that will avoid jeopardy and allow the action to proceed. 16 U.S.C. § 1536(b)(3)(A). The consultation process involves gathering the best available scientific information, making jeopardy determinations, consulting with affected Tribes, creating an RPA where there is jeopardy, and issuing an Incidental Take Statement to mitigate harm from take of listed species. See 50 C.F.R. §§ 402.01-402.16.

BOR – the action agency – has an independent substantive obligation to avoid taking actions

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 5 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

that jeopardize the survival and recovery of listed species. Sierra Club v. Marsh, 816 F.2d 1376, 1383 (9th Cir. 1987); NRDC v. Houston, 146 F.2d 1118, 1127 (9th Cir. 1998). Under the ESA, BOR has an independent duty to insure that its actions satisfy section 7 and the jeopardy standard. 16 U.S.C. § 1536(a)(2). "Following the issuance of a Biological Opinion, the Federal agency shall determine whether and in what manner to proceed with the action in light of its section 7 obligations and the Service's biological opinion." 50 C.F.R. § 402.15(a). Once NMFS issues an RPA, BOR can discharge its section 7 duties by implementing that RPA or another action that will avoid jeopardy. This Court found Phase III of the RPA invalid because the actions were not reasonably certain to occur.[1] The Ninth Circuit found Phases I and II of the RPA invalid; the inadequacies of the phased approach and short-term flow levels, discussed by the appellate court, violated the ESA and the Administrative Procedure Act. See 426 F.3d at 1090-95. BOR cannot rely on the Biological Opinion to meet its own ESA duties.

NMFS's supplement to the May 31, 2002 Klamath Irrigation Project Biological Opinion (Exhibit A) is not a new biological opinion resulting from a reinitiated consultation. Instead, it is "a supplemental analysis that more clearly articulates the rationale for our 'no jeopardy' conclusion … in light of the Ninth Circuit's October 18, 2005 Opinion…." Fed. Exh. A, cover letter (Feb. 1, 2006). It is firmly established that agencies cannot use post-hoc rationalizations to remedy inadequacies in the agency's decision and record. It is an axiom of administrative law that "an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962); Friends

---

[1] This Court also found the incidental take statement invalid. "The ITS at issue in this case is simply devoid of any threshold that, when reached, would indicate that an unacceptable level of take has occurred and would trigger reinitiation of consultation. This absolute failure to comply with the requirements of a valid ITS make the NMFS' issuance of the ITS in this case arbitrary and capricious." PCFFA v. U.S. Bureau of Reclamation, 02-2006 SBA, slip op. at 23-24 (N.D.

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000), citing Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (agency cannot rely on "post hoc rationalizations" to defend its earlier decisions; judicial review of an administrative agency's decision is limited to examination of the administrative record as it existed when the agency made the relevant decision); National Wildlife Fed'n v. National Marine Fisheries Serv., 235 F. Supp.2d 1143, 1152 (W.D. Wash. 2002) ("An agency seeking to justify its action may not offer a new explanation for the action, but must be judged on the rationale and record that led to the decision."). A new analysis cannot be used to support a decision already made. See also Securities & Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

Federal defendants claim that this supplement is not a post-hoc rationalization because NMFS used "only what was known in 2002." Fed. Opp. at 11. Four years after the fact, the agency is attempting to rewrite a biological opinion that has been found invalid. Whether the agency pretended that it was still 2002 when it produced the supplement cannot change the fact that NMFS is simply offering additional prose to justify a decision already made and found unlawful. That is the essence of post-hoc rationalization.

In Gifford Pinchot Task Force v. United States Fish and Wildlife Serv., 378 F.3d 1059, 1077 (9th Cir. 2004), the Fish and Wildlife Service ("FWS") argued that its new information amended the challenged biological opinions, and so the evidence was part of the reviewable record. The Ninth Circuit "reject[ed] the FWS's argument."

> If the data is new and the new data may affect the jeopardy or critical habitat analysis, then the FWS was obligated to reinitiate consultation pursuant to

Cal. July 15, 2003).

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA   - 7 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

> 50 C.F.R. § 402.16. If the data was preexisting, then the FWS is to be faulted for not generating the information in time for the initial BiOp. <u>Stated another way, the evidence either was old and cumulative, added to the administrative record to bolster support, or was new data that mandated reconsideration. Neither scenario allows for the admission of the new evidence.</u>

<u>Id.</u> (emphasis added). Whether framed as supplementing a record, amending a biological opinion, or supplementing a biological opinion, this course of action is impermissible. "[T]he FWS did not change its mind, but simply piled on more evidence. This is impermissible, whether termed an amendment or not." <u>Id.</u>

After the courts found the biological opinion invalid, NMFS had to conduct a new consultation with an open mind. "The agency's action on remand must be more than a barren exercise of supplying reasons to support a pre-ordained result. Post-hoc rationalizations by the agency on remand are no more permissible than are such arguments when raised by appellate counsel during judicial review." <u>Food Mktg. Inst. v. ICC</u>, 587 F.2d 1285, 1290 (D.C. Cir. 1978); <u>see</u> <u>also</u> <u>Independence Mining Co. v. Babbitt</u>, 105 F.3d 502, 511 (9th Cir. 1997) ("The rule barring consideration of post hoc agency rationalizations operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for that same determination when it is later reviewed by another body.").

NMFS's attempt here to insert a new explanation into the record is even more strained, given that the agency has already lost this case on the merits. For example, because the supplement seeks to justify the Phase II flows, NMFS continues to rely on the invalid 57% share of responsibility that has been found invalid by both this Court and the Ninth Circuit. <u>See</u> <u>PCFFA v. U.S. Bureau of Reclamation</u>, No. 02-2006 SBA, slip op. at 16 (N.D. Cal. July 15, 2003) ("As Plaintiffs correctly note, the ESA does not provide that an agency is only responsible for remediating its share of the harm. Rather, the ESA mandate is simple and clear – agencies may not

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA  - 8 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

undertake any action that results in jeopardy to the threatened species."); PCFFA v. U.S. Bureau of Reclamation, 426 F.3d at 1093 ("The flow level appears to be justified solely on the basis of the Klamath Project's share of responsibility for the water use. The proper baseline analysis is not the proportional share of responsibility the federal agency bears for the decline in the species, but what jeopardy might result from the agency's proposed actions in the present and future human and natural contexts."). No amount of explanation can justify reliance on a measure already struck down by the courts.

When new information emerges, NMFS must reinitiate consultation, 50 C.F.R. § 402.16, and undertake the full consultation process. Here, admittedly compelling new information has emerged about the impacts of the Klamath Irrigation Project on threatened coho salmon – impacts ranging from the massive fish kill of September 2002 to increased incidents of disease in the river to new scientific studies – and NMFS has spent 24 pages in Exhibit B previewing this new information. Yet Exhibit B is a "preliminary examination of what impact, if any, new information has on NMFS's conclusion" and "not the product of a reinitiated consultation." Fed. Opp. at 11 n.5. The agency has created a document that minimizes the import of this new information, rather than integrating it with the past information and assessing the whole record that exists today to develop an appropriate RPA.

Rather than reinitiate consultation and produce a new biological opinion based on the best available science, NMFS has only attempted to justify the invalidated Phase II. The ESA provides a "clear mandate" that a "comprehensive" biological opinion addressing "all phases of the agency action" must be completed before the action commences. Conner v. Burford, 848 F.2d 1441, 1453-55 (9th Cir. 1988). NMFS's new explanations cannot excuse it from the need to reinitiate consultation and produce a new biological opinion. Indeed, in other cases, courts have rejected
[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA   - 9 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

similar attempts to interject new explanations after the consultation process has finished. See Arizona Cattle Growers' Ass'n v. United States Fish and Wildlife Serv., 273 F.3d 1229, 1245 (9th Cir. 2001) (considering evidence presented after "the extraordinarily complex consultation process" concluded would render it "meaningless."); Gifford Pinchot Task Force, 378 F.3d at 1077 (rejecting attempt to amend biological opinions during litigation).

The ESA regulations explain the proper course of action when a biological opinion is rendered invalid and new information emerges. Under the regulations, reinitiation of consultation is required if circumstances change or new facts are discovered. 50 C.F.R. § 402.16. The invalidation of the May 31, 2002 biological opinion is a change of circumstances. The scientific and biological facts that have emerged since May 31, 2002 – including the massive fish kill of September 2002 – are new facts. A new biological opinion and the analysis that goes into such a biological opinion are needed here.

The risks to coho highlighted in Exhibit B are troubling. See Fed. Exh. B at 7 ("these data are adequate to demonstrate that two of three year classes of natural spawners are weak"); id. at 8 ('utilization of the mainstem by juvenile coho may be greater than previously thought and deserves additional study"); id. ("Observations of sick and dead salmonids (mostly Chinook) in the mainstem Klamath River has [sic] increased since the 1990's."); id. at 9 (researchers speculate "that there is a causal relationship between these low flow conditions and an increase in the abundance of habitat preferred by the polychaete worm that serves as intermediate host of *C. shasta*; … recent observations suggest high flows can effectively lower spore concentrations."); id. at 9 ("While juvenile fish disease was considered an impact to salmonids within the baseline section of the 2002 Opinion, the magnitude of infection observed since 2002 is greater than previously considered."); id. at 11 (claiming the RPA's flexibility can avert fish kills, although the 2002 fish kill occurred

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA  - 10 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

during Phase I of the RPA); id. at 17 ("During Phase I of the RPA, Klamath River coho salmon experienced generally poor conditions for rearing and outmigrating both in the mainstem Klamath River and in tributaries.").

Despite the magnitude of the impacts noted, NMFS pasted the same sentence into the conclusion of virtually every subsection – that the information "is not sufficient to warrant changing the conclusions reached in the 2002 biological opinion regarding the impact of Reclamation operations during Phases I and II." See, e.g., Fed. Exh. B at 4, 7, 8, 9, 11, 19. Under the ESA, risk must be borne by the project, not the fish. Sierra Club v. Marsh, 816 F.2d 1376, 1383 (9th Cir. 1987). NMFS, however, has switched that burden in the second document, putting the burden on the new information to shift it from its entrenched position in the May 31, 2002 Biological Opinion. In short, NMFS's preliminary review document spells trouble for coho, but minimizes the harm rather than fully assesses the new information in a § 7 consultation.

Neither of NMFS's new documents constitutes a new biological opinion and neither resulted from a § 7 consultation. While NMFS contends the first document rests on the administrative record as it existed in 2002, the second document confirms that much has happened since. Because the Ninth Circuit invalidated Phases I and II of the Klamath Irrigation Project Biological Opinion, pending reinitiation of ESA consultation and compliance with a new biological opinion, an injunction to protect the listed species should issue. Pacific Rivers Council v. Thomas, 30 F.3d at 1057; Thomas v. Peterson, 753 F.2d at 763-65.

The Court finds that an injunction is necessary to ensure that flows in the Klamath River are sufficient to prevent harm to coho salmon and their habitat while the agencies comply with the law. Numerous cases from the Supreme Court and the Ninth Circuit affirm that Congress explicitly foreclosed the exercise of traditional equitable discretion by courts faced with a violation of ESA
[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA   - 11 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

§ 7. See, e.g., Tennessee Valley Auth. v. Hill, 437 U.S. 153, 194 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities."); Sierra Club v. Marsh, 816 F.2d at 1384 (plaintiff entitled to injunctive relief for a substantive or procedural violation of the ESA if agency "refus[ed] to reinitiate consultation"); Thomas v. Peterson, 753 F.2d at 764-65 ("It is not the responsibility of the plaintiffs to prove, nor the function of the courts to judge, the effect of a proposed action on an endangered species when proper procedures have not been followed."); Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1073 (9th Cir. 1996) ("Congress has determined that under the ESA the balance of hardships always tips sharply in favor of endangered or threatened species.").

Here, NMFS found that BOR's operation of the Klamath Irrigation Project would jeopardize the continued existence of threatened coho salmon. Courts have issued injunctions on the basis on far less harm. See Washington Toxics Coalition v. EPA, 413 F.3d 1024, 1035 (9th Cir. 2005). The California Department of Fish and Game concluded that low river flows were a major cause of the massive fish kill of September 2002. California Department of Fish and Game, September 2002 Klamath River Fish Kill: Preliminary Analysis of Contributing Factors at 54 ("The DFG concludes that low flows and other flow related factors (e.g., fish passage and fish density) caused [] the 2002 fish kill on the lower Klamath River."). Additionally, NMFS's preliminary analysis in Exhibit B outlines the harm facing coho salmon.

As for the specific flow level necessary to prevent harm to the coho, PCFFA and the Tribes ask the Court to enjoin BOR from making irrigation diversions at the Klamath Project unless flows in the Klamath River below Iron Gate Dam meet 100% of the Phase III flow levels specifically identified by NMFS in the Biological Opinion as necessary to prevent jeopardy. AR 248,

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 12 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Biological Opinion at 70 (Table 9). This Court upheld these long-term Phase III flow levels, and PCFFA did not appeal that part of the decision. Indeed, the flow schedule in Phase III is the only portion of the Biological Opinion that remains valid, and the Ninth Circuit contemplated the Phase III flows as the starting point for any supportable in-stream flow regime. See 426 F.3d at 1095 ("Phase III clearly presents 'specific quantitative target flows' that the NMFS concluded were necessary to avoid jeopardy.").

The Ninth Circuit recognized the importance of preventing short-term harm to the threatened coho. "We emphasize that the interim injunctive relief should reflect the short life-cycle of the species. It is not enough to provide water for the coho to survive in five years, if in the meantime, the population has been weakened or destroyed by inadequate water flows." 426 F.3d at 1095.

> Phases I and II occupy *eight years* of the ten-year plan. Five full generations of coho will complete their three-year life cycles – hatch, rear, and spawn – during those eight years. Or, if there is insufficient water to sustain the coho during this period, they will *not* complete their life cycle, with the consequence that there will be no coho at the end of the eight years. If that happens, all the water in the world in 2010 and 2011 will not protect the coho, for there will be none to protect.

Id. at 1094 (emphasis in original).

In addition to preventing irreparable harm to the coho salmon, entry of injunctive relief will create firm expectations for the upcoming water year for all – irrigators, Tribes, fishermen, and conservationists. BOR annually issues its Klamath Irrigation Project Plan of Operations around April 1. That plan is based upon what type of "water year" is forecasted by the Natural Resource Conservation Service. The sooner BOR understands its ESA obligations, the sooner it can plan for appropriate irrigation deliveries and the less chance there is of an injunction disrupting settled expectations. The Court's injunction will create a floor for river flows during reinitiation of consultation should weather and water forecasts change, but may cause no changes should

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 13 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

conditions remain wet.

Upon consideration of the documents filed in support of the motion, together with the declarations and relevant exhibits, opposing memoranda, and the entire record in this action, the Court hereby:

GRANTS PCFFA's and the Tribes' request for an injunction following remand;

ORDERS defendants NMFS and BOR to reinitiate consultation on the Klamath Irrigation Project;

ORDERS defendant NMFS to issue a new biological opinion based on the current scientific evidence and the full risks to threatened coho salmon and to provide a copy of the new biological opinion to the plaintiffs and to the Court when it is completed;

AND ORDERS defendant BOR to limit Klamath Project irrigation deliveries if they would cause water flows in the Klamath River at and below Iron Gate Dam to fall below 100% of the Phase III flow levels specifically identified by NMFS in the Biological Opinion as necessary to prevent jeopardy, Biological Opinion at 70 (Table 9), until the new consultation for the Klamath Irrigation Project is completed and reviewed by this Court.

IT IS SO ORDERED.

DATED at Oakland, California this 27 day of March, 2006.

*[signature: Saundra B. Armstrong]*

HON. SAUNDRA B. ARMSTRONG
United States District Judge

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 14 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

| | |
|---|---|
| 1 | Presented by: |
| 2 | |
| 3 | |
| 4 | /s/ Kristen L. Boyles<br>KRISTEN L. BOYLES (CSB #158450) |
| 5 | Earthjustice<br>705 Second Avenue, Suite 203 |
| 6 | Seattle, WA 98104-1711<br>(206) 343-7340 |
| 7 | (206) 343-1526 *[FAX]*<br>kboyles@earthjustice.org |
| 8 | |
| 9 | *Attorneys for Plaintiffs* |
| 10 | MICHAEL R. SHERWOOD (CSB # 63702) |
| 11 | Earthjustice<br>426 Seventeenth Street, 5th Floor |
| 12 | Oakland, CA 94612<br>(510) 550-6725 |
| 13 | (510) 550-6749 *[FAX]*<br>msherwood@earthjustice.org |
| 14 | |
| 15 | *Local Counsel for Plaintiffs* |
| 16 | |
| 17 | |
| 18 | /s/ Kristen L. Boyles, for *<br>CURTIS G. BERKEY |
| 19 | SCOTT W. WILLIAMS |
| 20 | Alexander, Berkey, Williams & Weathers, LLP<br>2030 Addison Street, Suite 410 |
| 21 | Berkeley, CA 94704<br>(510) 548-7070 |
| 22 | (510) 548-7080 *[FAX]*<br>cberkey@abwwlaw.com |
| 23 | swilliams@abwwlaw.com |
| 24 | |
| 25 | *Attorneys for Plaintiff-Intervenors*<br>*Yurok Tribe* |
| 26 | |
| 27 | |
| 28 | |

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA     - 15 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

/s/  Kristen L. Boyles, for *
THOMAS P. SCHLOSSER
ROB ROY SMITH
Morisset Schlosser Jozwiak & McGaw
801 Second Avenue, Suite 1115
Seattle, WA  98104-1509
(206) 386-5200
(206) 386-7322 *[FAX]*
t.schlosser@msaj.com
r.smith@msaj.com

GRETT L. HURLEY
Office of Tribal Attorney
Hoopa Valley Tribe
P.O. Box 188
Hoopa, CA  95546
(530) 625-4211
(530) 625-4847 *[FAX]*
hoopalaw@pcweb.net

*Attorneys for Plaintiff-Intervenors*
*Hoopa Valley Tribe*

* per e-mail authorization

[PROPOSED] ORDER GRANTING MOTION
FOR INJUNCTIVE RELIEF FOLLOWING REMAND
Civ. No. C02-2006 SBA    - 16 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*